# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

| | |
|---|---|
| VOLKSWAGEN GROUP OF AMERICA CHATTANOOGA OPERATIONS, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NO. _____ |
| SAARGUMMI TENNESSEE, INC., | ) ) ) |
| Defendant. | ) ) |

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff, Volkswagen Group of America Chattanooga Operations, LLC ("VW" or "Volkswagen"), states as follows for its Verified Complaint against Defendant SaarGummi Tennessee, Inc. ("SaarGummi"):

## PARTIES, JURISDICTION AND VENUE

1. VW Chattanooga is a Tennessee limited liability company. The sole member of VW Chattanooga is Volkswagen Group of America, Inc., which is a privately held corporation in New Jersey with a principal place of business in Herndon, Virginia. Accordingly, VW Chattanooga is a citizen of both New Jersey and Virginia.

2. SaarGummi Tennessee, Inc. is, upon information and belief, a Tennessee corporation with a principal place of business in Pulaski, Tennessee. SaarGummi may be served with process on its Registered Agent, Corporation Service Company, Attn: Bryan Gillit, 200 Commerce Way, Pulaski, Tennessee 38478-8751.

3. Venue and jurisdiction are proper in this District, because SaarGummi has anticipatorily repudiated a contract that provides for the United States District Court for the

Eastern District of Tennessee to be the exclusive venue and jurisdiction of any action seeking equitable relief.

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because: (1) there is complete diversity between VW Chattanooga and SaarGummi; and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs.

## STATEMENT OF FACTS

**A. The Parties and the Contract**

5. Volkswagen, as buyer, and SaarGummi, as supplier, are parties to a series of Nomination Agreements for the supply of sealing systems, which are automotive component parts (hereinafter the "Parts" or "sealing systems"). The Nomination Agreements are attached as **Exhibit A**.

6. The Nomination Agreements are between VW Chattanooga and SaarGummi, and they are valid and enforceable contracts for the production of sealing systems.

7. The Nomination Agreements incorporate by reference the Volkswagen Group of America Chattanooga Operations, LLC's Production Terms and Conditions of Purchase (the "Terms and Conditions"), which are attached as **Exhibit B**.[1]

8. Volkswagen and SaarGummi have entered into a series of purchase orders spanning from approximately January, 2017 through today, all of which are governed by the Nomination Agreements and the Terms and Conditions. The Nomination Agreements, the Terms and Conditions, and the purchase orders will hereinafter collectively be referred to as the "Contract".

---

[1] *See* Nomination Agreements, **Exhibit A**. The Terms and Conditions as revised on July 1, 2022, govern the Nomination Agreements. The Terms and Conditions allow VW to revise them from time to time, which it recently did on July 1, 2022. Notably, the relevant terms quoted herein have not changed since SaarGummi contracted with VW. *See* **Ex. B**, Terms and Conditions, ¶ 42.

**B.     Relevant Terms under the Contract**

9. SaarGummi supplies Volkswagen with sealing systems for use in assembly of the Volkswagen Atlas and Volkswagen Atlas Cross Sport. Pursuant to the Nomination Agreements, SaarGummi's obligations include the development, manufacture and delivery of sealing systems as required by Volkswagen. (**Ex. A**).

10. Under Section 5 of the Terms and Conditions, SaarGummi has agreed that:

> "[P]rices are not subject to increase, unless specifically stated in the Order, the RFQ Documents or a Prior Agreement, and Seller assumes the risk of any event or cause affecting prices, including without limitation, . . . increases in raw material costs, inflation, increases in labor and other production and supply costs, and any other event which impacts the price or availability of materials or supplies."

(**Ex. B**, Terms and Conditions § 5).

11. The Terms and Conditions also state that "Seller may not suspend performance of the Order or terminate the Order for any reason." (**Ex. B**, Terms and Conditions § 20).

12. The Terms and Conditions further provide that "either party may, with respect to a Claim, apply to a court for equitable relief, including a temporary restraining order, preliminary injunction or other interlocutory or relief[.]" (**Ex. B**, Terms and Conditions § 38.1(f)). Additionally, the Terms and Conditions state that "[a]ny court relief sought under this Section shall be brought in and subject to the exclusive venue and jurisdiction of the courts of Hamilton County, Tennessee or the U.S. District Court for the Eastern District of Tennessee, as applicable[.]" (*Id.*)

13. Recognizing the nature of the automotive industry and the critical need for timely deliveries and uninterrupted supply (because Volkswagen does not manufacture these specially-made Parts), Volkswagen and SaarGummi have also agreed that money damages would not be

an adequate remedy to Volkswagen if SaarGummi stops supplying the Parts. Notably, Section 15 of the Terms and Conditions provides:

> In any action brought by Buyer to enforce Seller's obligations in connection with the production or delivery of Supplies or transition support . . . Seller acknowledges and agrees that monetary damages are not a sufficient remedy for any actual, anticipatory or threatened breach of the Order and that, in addition to all other rights and remedies that Buyer may have, Buyer shall be entitled to specific performance and injunctive equitable relief as a remedy for any such breach, plus Buyer's reasonable attorneys' fees.

(**Ex. B**, Terms and Conditions § 15).

**C.     SaarGummi's Anticipatory Repudiation of the Contract**

14.     In June of 2021, SaarGummi began demanding a price increase with respect to the Parts. Volkswagen had multiple conversations with SaarGummi regarding the demands, and continued to negotiate with SaarGummi through June of 2022.

15.     Thereafter, on July 8, 2022, SaarGummi notified Volkswagen that certain "external factors" entitled SaarGummi to "declare Force Majeure," and that "continued production and delivery in accordance with the underlying agreements [was] commercially impractical and impossible." *See* July 8, 2022 letter attached as **Exhibit C**.[2]

16.     Before Volkswagen had sufficient time to even formulate a response to the July 8, 2022 letter, SaarGummi followed up with a letter on July 13, 2022, in which SaarGummi stated unequivocally it would almost immediately stop supplying the Parts:

> SaarGummi . . . hereby advises Volkswagen that for the reasons set forth in the Prior Notification and on the bases set forth therein, as

---

[2] The Force Majeure clause in VW's Terms and Conditions is not relevant to this dispute and has no effect on SaarGummi's obligations under the Contract. "The change in cost or availability of materials or components based on market conditions, supplier actions, or contract disputes or any labor strike or other labor disruption applicable to Seller or any of its subcontractors or sub-suppliers, will not excuse Seller's performance (under theories of force majeure, commercial impracticability or otherwise), and Seller assumes these risks." *See* **Ex. B**, at ¶ 23.

> of Monday, July 18, 2022, SaarGummi U.S. will stop producing and delivering to Volkswagen the sealing systems described in the attached exhibit to the Prior Notification (the "Parts").

So only five days after its initial letter threatening to cut off supply of the Parts, SaarGummi gave Volkswagen only an additional five days (which included a weekend) before stopping the supply of Parts altogether. *See* July 13, 2022 letter attached as **Exhibit D**.

17. The next day, Volkswagen responded to SaarGummi, reminding SaarGummi of its obligations under the Contract and demanding adequate assurances that it would continue production and shipment at the current price pursuant to the Contract. *See* July 14, 2022 letter attached as **Exhibit E**.

18. SaarGummi has failed to provide adequate assurances that it will continue to perform under its Contract with Volkswagen.

**D.     The Anticipatory Repudiation Requires Injunctive Relief.**

19. SaarGummi's notice that it will no longer ship the Parts requires injunctive relief. Volkswagen's supply chain requires timely delivery of all component parts, otherwise the entire supply chain shuts down, stopping assembly at Volkswagen. Volkswagen requires a timely delivery model, which is standard in the automotive industry and means that Volkswagen does not have a sufficient inventory of excess parts.

20. The sealing systems SaarGummi manufactures are unique component, automotive parts that must meet demanding engineering specifications and require extensive certification and validation for production, and SaarGummi is the sole source of supply of these products. Volkswagen cannot readily obtain replacement parts from another supplier, nor can it manufacture them internally. SaarGummi is aware Volkswagen has no ready replacement source of supply for these products.

21. Any delay in the delivery of these Parts, delivery of less than the number required under the Contract, or stoppage in delivery of the same will lead to a shutdown of Volkswagen's assembly process.

22. SaarGummi is aware that abruptly stopping deliveries will cause catastrophic harm to Volkswagen.

23. Such catastrophic harm will include, but is not limited to, Volkswagen stopping assembly of the Atlas vehicles, delaying the launch of Volkswagen's updated vehicles, sending up to 3,000 Volkswagen workers home without pay, and causing further unavailability of vehicles on the market during a time when vehicle supply is already a critical issue in the United States. Existing consumers of Volkswagen vehicles could also be impacted if those vehicles are in need of repairs involving the Parts SaarGummi supplies.

24. Volkswagen is left with no recourse but to seek immediate relief from this Court to avoid irreparable harm.

## CAUSE OF ACTION

### COUNT 1 – BREACH OF CONTRACT/ANCITIPATORY REPUDIATION OF THE CONTRACT

25. Volkswagen incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

26. Volkswagen and SaarGummi have valid and binding contracts that requires SaarGummi to supply Volkswagen with all ordered quantities of the sealing systems at the prices set forth in the parties' Contract. SaarGummi is bound by the obligations set forth in the Contract.

27. Volkswagen has fulfilled all of its contractual obligations under the Contract.

28. SaarGummi's communicated intent to cease delivery of the Parts by July 18, 2022 constitutes a material breach of the Contract by anticipatory repudiation.

29. SaarGummi's failure to provide adequate assurances also constitutes a repudiation of the Contract under Tenn. Code Ann. § 47-2-609.

30. Under the Terms and Conditions, SaarGummi may not suspend performance under the Contract or terminate the Contract for any reason. (**Ex. B**, Terms and Conditions § 20).

31. If SaarGummi does not continue to manufacture and ship the Parts, Volkswagen will be unable to fulfill its assembly obligations, which will force Volkswagen to shut down assembly lines, resulting in idle assembly operations, and potentially significant layoffs. Volkswagen will suffer substantial damages which, at this time, are not feasible to reasonably calculate, but at a minimum would be equal to the resulting cost associated with a shutdown, as well as damage to Volkswagen's business goodwill and reputation in the automotive industry as a whole.

32. Given the magnitude of such damages, monetary relief will not provide Volkswagen with an adequate remedy. However, to the extent the Court awards monetary relief to Volkswagen, SaarGummi will remain responsible for all monetary damages for assembly line shut downs caused by its material breach of the Contract.

33. Volkswagen has been unable to locate an alternate supplier that would be able to immediately begin supplying the Parts to avoid a shutdown of Volkswagen's assembly plant.

34. If SaarGummi does not perform its contractual obligations, Volkswagen will have no adequate remedy at law for the harm caused by such breach, and SaarGummi and Volkswagen agreed that Volkswagen would be entitled to injunctive relief in such circumstances. (**Ex. B**, Terms and Conditions § 15).

35. Additionally, under Tenn. Code Ann. § 47-2-716, Volkswagen is entitled to equitable relief in the form of an order for specific performance, because the Parts are specially manufactured goods without readily available substitutes.

## PRAYER FOR RELIEF

WHEREFORE, Volkswagen prays as follows:

A. For process to issue and be served on Defendant, requiring it to answer the allegations in the Complaint;

B. For injunctive relief preventing SaarGummi from taking any action inconsistent with its supply obligation to Volkswagen under the Contract;

C. For an order of specific performance and/or mandatory injunction requiring SaarGummi to continue to supply Volkswagen with the ordered quantities of the Parts under the Contract and at the prices agreed upon in the Contract;

D. For all monetary damages suffered by Volkswagen due to any ordered Parts not shipped by SaarGummi;

E. For an award of reasonable attorneys' fees and costs arising out of SaarGummi's failure to perform under the Contract; and

F. For all other relief as the Court may deem, just, equitable or appropriate under the circumstances.

Respectfully submitted,

CHAMBLISS, BAHNER & STOPHEL, P.C.

By:/s/*Timothy M. Gibbons*
   Timothy M. Gibbons, BPR# 014860
   Cathy S. Dorvil, BPR# 034060
   Logan C. Threadgill, BPR # 034470
Liberty Tower
605 Chestnut Street, Suite 1700
Chattanooga, TN 37450
Telephone: (423) 756-3000
Facsimile: (423) 265-9574
Email: tgibbons@chamblisslaw.com
       cdorvil@chamblisslaw.com
       lthreadgill@chamblisslaw.com
*Counsel for Volkswagen Group of America Chattanooga Operations, LLC*

## VERIFICATION

I, Daniel Trespalacios Soto, declare as follows:

I am the Director Purchasing Commodity Exterior of Volkswagen Group of America Chattanooga Operations, LLC ("VW Chattanooga"). I have reviewed the foregoing Verified Complaint for Injunctive Relief and Damages. Except as to those matters alleged on information and belief, I verify that the facts set forth above are true and correct based upon my information, personal knowledge and belief, including information gathered from Volkswagen's documents that were prepared and maintained in the ordinary course of the company's business and/or Volkswagen's employees who have personal knowledge of the facts asserted.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 19th day of July, 2022, at Chattanooga, Tennessee.

STATE OF _____ : TN
COUNTY OF _____ : Hamilton

SWORN TO AND SUBSCRIBED before me this 19th day of July, 2022.

_____
NOTARY PUBLIC

My commission expires: 4/12/2026

OFFICIAL SEAL:

