UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| VOLKSWAGEN GROUP OF AMERICA CHATTANOOGA OPERATIONS, LLC, | ) ) ) |
| *Plaintiff*, | ) Case No. 1:22-cv-191 ) |
| v. | ) Judge Atchley ) |
| | ) Magistrate Judge Steger |
| SAARGUMMI TENNESSEE, INC., | ) ) |
| *Defendant*. | ) |

Before the Court is Plaintiff's Motion for Temporary Restraining Order [Doc. 3] pursuant to Federal Rule of Civil Procedure 65. A hearing on this matter was held on July 19, 2022, at which counsel for both parties appeared. For the reasons stated orally by the Court on the record and set forth herein, the Motion [Doc. 3] will be **DENIED.**

The Verified Complaint alleges that Plaintiff Volkswagen Group of America Chattanooga Operations, LLC, as buyer, and SaarGummi Tennessee, Inc., as supplier, entered into a series of agreements for the supply of sealing systems, which are automotive component parts. [Doc. 1 at ¶ 5]. Defendant supplies Plaintiff with sealing systems for use in assembly of the Volkswagen Atlas and Volkswagen Atlas Cross Sport (the "Parts"). [Doc. 1 at ¶ 9].

The Terms and Conditions of the agreement provide:

> Prices are not subject to increase, unless specifically stated in the Order,[1] the RFQ Documents, or a Prior Agreement, and Seller assumes the risk of any event or cause affecting prices, including without limitation, foreign exchange rates, increases in raw material costs, inflation, increases in labor and other production and supply costs and any other event which impacts the price or availability of materials or supplies.

---

[1] The term "Order" is defined as "the collective set of documents" including the electronic Nomination Agreement, the Terms and Conditions, the purchase order, and the RFQ documents. [Doc. 1-2 at 2].

[Doc. 1-2 at 3]. The Terms and Conditions further provide that "Seller shall not suspend performance of the Order or terminate the Order for any reason." [*Id.* at 10].

In June 2021, Plaintiff alleges that Defendant began demanding price increases with respect to the Parts. [Doc. 1 at ¶ 14]. Plaintiff alleges that it continued to negotiate with Defendant through June 2022. [*Id.*]. On July 8, 2022, Defendant sent a letter to Plaintiff advising that certain external factors had caused unprecedented disruption to Defendant's efforts to produce and deliver the Parts to its customers. [Doc. 1-3 at 1]. Defendant asserted that these external factors undermined the basic assumptions in the underlying contracts and "potentially discharge the obligation to produce and deliver the Parts listed on Exhibit 1 or make their continued production and delivery in accordance with the agreements commercially impractical and impossible, as well as untenable as a business matter." [*Id.*].

Before Plaintiff responded, Defendant sent another letter on July 13, 2022, advising that for the reasons set forth in the prior letter, as of July 18, 2022, "SaarGummi U.S. will stop producing and delivering to Volkswagen the sealing systems described in the attached exhibit to the Prior Notification." [Doc. 1-4 at 1]. The letter further stated that Defendant "is declaring Force Majeure consistent with the Prior Notification and undertaking cessation of production and delivery of Parts for the reasons set forth above." [*Id.*]. Defendant responded on July 14, 2022, disputing Defendant's ability to terminate or modify the agreement with Plaintiff. [Doc. 1-5].

Plaintiff filed its Verified Complaint for Injunctive Relief and Damages [Doc. 1] on July 19, 2022, and its Motion for Temporary Restraining Order [Doc. 3] the same day. The Verified Complaint asserts a claim for breach of contract / anticipatory repudiation of the contract and seeks injunctive relief, specific performance of the contract, monetary damages, and attorneys' fees and costs. [Doc. 1 at 8]. The Motion asserts, *inter alia*, that Plaintiff's supply chain requires

timely delivery of component parts, otherwise the entire supply chain shuts down, stopping assembly at Volkswagen. [Doc. 4 at 5]. Plaintiff asserts that it cannot readily obtain replacement parts from another supplier, nor can it manufacture the Parts internally. [*Id.*].

A temporary restraining order is an "emergency measure," *Hartman v. Acton*, Case No. 2:20-cv-1952, 2020 WL 1932896 (S.D. Ohio April 21, 2020), only granted when "specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant." Fed. R. Civ. P. 65(b). Courts consider four factors when determining whether to issue a temporary restraining order: (1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable injury without an injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *See McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012).[2] "The standard for issuing a temporary restraining order is logically the same as for a preliminary injunction with emphasis, however, on irreparable harm given that the purpose of a temporary restraining order is to maintain the status quo." *ABX Air, Inc. v. Int'l Brotherhood of Teamsters, Airline Division*, 219 F. Supp.3d 665, 670 (S.D. Ohio 2016) (citing *Reid v. Hood*, No. 1:10-cv-2842, 2011 WL 251437 *1, *2 (N.D. Ohio 2011)); *Hartman*, 2020 WL 1932896 at *2 ("To obtain temporary injunctive relief, it is of paramount importance that the party establish immediacy and irreparability of injury."). Like a preliminary injunction, a temporary restraining order is "an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty. Govt.*, 305 F.3d 566 (6th Cir. 2002) (analyzing a request for a preliminary injunction); *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) (same).

---

[2] The preliminary injunction standard is also used for temporary restraining orders in the Sixth Circuit. *See Ne. Ohio Coal. For Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006).

Here, Plaintiff shows that if it does not receive a delivery of Parts, its current supply will allow it to continue operations until around midday on July 20, 2022. The Parts are used in assembly of the Volkswagen Atlas and Volkswagen Atlas Cross Sport. [Doc. 1 at ¶ 9]. These vehicles are the only two vehicles currently assembled in the Chattanooga facility. Once Plaintiff runs out of Parts, operation of facility will come to a halt. [Doc. 1 at ¶ 21]. Plaintiff shows that 3,000 workers are currently employed in the assembly of these vehicles, and they will be unable to work if the facility ceases assembly. [*Id.* at ¶ 23]. Plaintiff shows that while it has attempted to find an alternate supplier of the Parts, those efforts have not been successful. [*Id.* at ¶ 33].

At the July 19th hearing, counsel for Defendant represented to the Court that Defendant has agreed to resume delivery of the Parts and committed to have a delivery of the Parts available for pickup that evening. It is not clear how long this delivery will allow Plaintiff to continue assembling the vehicles. The record also does not reflect the terms of that agreement to resume delivery.

Based on the allegations of the Verified Complaint and the representations made at the hearing of this matter, the Court finds that Plaintiff has not met its burden of demonstrating that it is entitled to the extraordinary relief of a temporary restraining order. The Court finds that Plaintiff has not set forth "specific facts" that demonstrate an immediate and irreparable loss. Defendant represented that a delivery of Parts would be made available on July 19th. Perhaps understandably, Plaintiff could not say how long this delivery would allow the plant to continue to operate. But without that information, Plaintiff cannot show that the harm they expect to suffer is immediate.

Moreover, a temporary restraining order that requires an "affirmative act," *e.g.*, continued delivery under the parties' agreements, "requires a higher – yet undefined – burden to issue than required of an order merely preserving the status quo." *Shelby Cnty. Advocates for Valid Elections*

*v. Hargett*, 348 F. Supp. 3d 764, 769 (W.D. Tenn. 2018) (*citing Hill v. Snyder*, No. 16-2003, 2016 WL 4046827, *2 (6th Cir. July 20, 2016)); *see Ne. Ohio Coalition for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1006 (6th Cir. 2006) ("[C]ourts have allowed interlocutory appeal of TROs that do not preserve the status quo but rather act as a mandatory injunction requiring affirmative action."). While the United States Court of Appeals for the Sixth Circuit does not appear to have spoken directly to this issue, district courts in the circuit have recognized the higher burden for TROs that require affirmative action from those subject to it. *See e.g., Lapine v. Pavitt*, Case No. 2:20-cv-12788, 2021 WL 777196, at *1 (E.D. Mich. March 1, 2021). Based on the incoming delivery and the existing supply of Parts, it is not clear whether or when the Chattanooga facility will have to cease assembly of the vehicles.

On the record presently before the Court, Plaintiff has not carried its burden of clearly demonstrating that it will suffer immediate, irreparable harm in the absence of a TRO. And "a district court is not required to make specific findings concerning each of the four factors . . . if fewer factors are determinative of the issue." *Nat'l Hockey League Players' Ass'n v. Plymouth Whalers Hockey Club*, 325 F.3d 712, 717 (6th Cir. 2003); *see also D.T., et al. v. Sumner Cty. Sch., et. al.*, 942 F.3d 324, 327 (6th Cir. 2019) (explaining that the district court did not err in stopping its inquiry after finding no irreparable injury, as irreparable harm is required, and its absence is dispositive). The existence of irreparable harm is "indispensable." *Id.* at 327. "[E]ven the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.'" *Id.* at 326-27 (citing *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)). The Court therefore finds that on this record, there is not a sufficient basis to mandate that Defendant continue to deliver the Parts under the parties' agreements.

5

Accordingly, Plaintiff's Motion for Temporary Restraining Order [Doc. 3] is **DENIED**. The Court will hold a hearing on Plaintiff's request for preliminary injunction on **July 26, 2022, at 2:00 p.m.** before the United States District Judge, Courtroom 1A, Howard H. Baker, Jr. United States Courthouse, 800 Market Street, Knoxville, Tennessee.

All briefing and, to the extent practicable, evidentiary submissions, shall be filed by **5:00 p.m. ET** on **July 22, 2022.** On or before **July 25, 2022**, the parties **SHALL** exchange exhibit lists. The parties are **FURTHER ORDERED** to confer regarding any evidentiary disputes in advance of the hearing.

**SO ORDERED.**

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**