# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

VOLKSWAGEN GROUP OF AMERICA )
CHATTANOOGA OPERATIONS, LLC, )
                      )
     Plaintiff,            )
                      )
v.                     )
                      )    Case No: 1:22-cv-00191
SAARGUMMI TENNESSEE, INC., )
                      )
     Defendant.       )    Judge Atchley
                      )
                      )    Magistrate Judge Lee
                      )

## DECLARATION OF DANIEL SOTO TRESPALACIOS

Daniel Trespalacios Soto gives the following declaration:

1.　　My name is Daniel Trespalacios Soto. I am over 18 years old, am fully competent to provide this Declaration, and have personal knowledge of the matters stated herein.

2.　　I am employed by Volkswagen Group of America, Inc.("Volkswagen"), and I am currently the Director of Purchasing Exterior Commodity for Volkswagen. Prior to this position, I was the Director of Purchasing Powertrain and Connectivity Commodities for Volkswagen de Mexico S.A. de C.V. from July 2019 to March 2021.

3.　　As the Director of Purchasing Exterior Commodity, I have significant experience negotiating, working with and purchasing parts from various auto manufacturing suppliers on behalf of Volkswagen, including SaarGummi Tennessee, Inc. ("SaarGummi"). I am also familiar with the contract documents governing Volkswagen's arrangements with such suppliers, including its Nomination Agreements, Purchase Orders, and Production Terms & Conditions of Purchase. Additionally, I have a strong understanding of Volkswagen's day-to-day operations

and the supply chain for the assembly of the Volkswagen Atlas and the Volkswagen Atlas Cross Sport.

4.      Volkswagen, as buyer, and SaarGummi, as seller, are parties to a series of Nomination Agreements for the supply of certain sealing systems, which are automotive component parts (the "Nominations Agreements").  A true and correct copy of the Nomination Agreements is attached as **Exhibit A**.  The Nomination Agreements incorporate by reference Volkswagen's Production Terms and Conditions of Purchase (the "Terms and Conditions").  A true and correct copy of the Terms and Conditions is attached as **Exhibit B**.  Volkswagen and SaarGummi have entered into a series of purchase orders spanning from approximately January, 2017 to the present, all of which are governed by the Nomination Agreements and the Terms and Conditions.[1]  A true and correct copy of the Purchase Orders is attached as **Exhibit C**.

5.      SaarGummi supplies Volkswagen with the sealing systems parts (the "Parts") for use in the assembly of the Volkswagen Atlas and the Volkswagen Atlas Cross Sport.  Pursuant to the Nomination Agreements, SaarGummi's obligations include the development, manufacture, and delivery of the Parts as required by Volkswagen. The Parts are unique component parts manufactured only by SaarGummi for Volkswagen's use in assembly operations.  The Parts are not fungible goods that can be procured from any alternative source, and SaarGummi is aware that Volkswagen has no ready replacement source of supply for these products.  Each shipment of Parts generally provides for approximately 1.5 day of vehicle production.

6.      Under Section 5 of the Terms and Conditions, SaarGummi has agreed that:

> [P]rices are not subject to increase, unless specifically stated in the Order, the RFQ Documents or a Prior Agreement, and Seller assumes the risk of any event or cause affecting prices, including without limitation, . . . increases in raw material costs, inflation,

---

[1] The Nomination Agreements, the Terms and Conditions, and the Purchase Orders with SaarGummi will hereinafter collectively be referred to as the "Contract".

22043_01/22002/LCT-4882-6455-9402_4

increases in labor and other production and supply costs, and any other event which impacts the price or availability of materials or supplies.[2]

7.      The Terms and Conditions state that SaarGummi "may not suspend performance of the Order or terminate the Order for any reason."[3]  And they state that "either party may, with respect to a Claim, apply to a court for equitable relief, including a temporary restraining order, preliminary injunction or other interlocutory or relief[.]"[4]  Additionally, they provide that "[a]ny court relief sought under this Section shall be brought in and subject to the exclusive venue and jurisdiction of the courts of Hamilton County, Tennessee or the U.S. District Court for the Eastern District of Tennessee, as applicable[.]"[5]

8.      In June of 2021, SaarGummi began demanding a price increase with respect to the Parts.  Various Volkswagen representatives, including myself, had multiple conversations with SaarGummi regarding the demands, and we continued to negotiate with SaarGummi through June of 2022.

9.      However, on July 8, 2022, SaarGummi notified Volkswagen that certain "external factors" entitled SaarGummi to "declare Force Majeure," and that "continued production and delivery in accordance with the underlying agreements [was] commercially impractical and impossible." A copy of the July 8, 2022 letter from SaarGummi is attached as **Exhibit D**.

10.      I reviewed the July 8 letter with Volkswagen's in house counsel and other VW employees, but before we had sufficient time to formulate a response, SaarGummi followed up

---

[2] (**Ex. B**, Terms and Conditions § 5).
[3] (**Ex. B**, Terms and Conditions § 20).
[4] (**Ex. B**, Terms and Conditions § 38.1(f)).
[5] (**Ex. B**, Terms and Conditions § 38.1(f)).

with a letter on July 13, 2022, in which it stated that it would no longer ship the Parts beginning on July 18, 2022. A copy of the July 13, 2022 letter from SaarGummi is attached as **Exhibit E**.

11.     Upon receiving SaarGummi's letter dictating the immediate cutoff of supply, outside counsel for Volkswagen wrote to SaarGummi on July 14, 2022, reminding SaarGummi of its obligations under the Contract and demanding adequate assurances that it would continue production and shipment of the Parts pursuant to the Contract. A copy of the July 14, 2022 letter is attached as **Exhibit F**.

12.     Multiple Volkswagen representatives, including myself, have attempted to resolve this dispute since receiving SaarGummi's July 13, 2022 letter. Nevertheless, SaarGummi has refused to cooperate and, in fact, temporarily ceased shipping the Parts on July 18, 2022. Only after Volkswagen filed a Verified Complaint and Motion for Temporary Restraining Order initiating this action, did SaarGummi resume shipping the Parts for an unspecified period of time.

13.     SaarGummi delivered Parts to Volkswagen's Assembly Plant in Chattanooga on July 19, 2022, and it has continued to ship Parts since the filing of this lawsuit. Nevertheless, it has not confirmed that it will cease threatening to stop shipments, in accordance with its contractual obligations, nor has it provided any adequate assurances that it will continue to perform in the future. Each shipment of the Parts is generally only enough to keep Volkswagen's supply chain running for approximately 1.5 days.

14.     Volkswagen has requested confirmation that SaarGummi will not stop, or threaten to stop, future deliveries based on the current economic situation. But SaarGummi has failed to provide such confirmation.

15. If SaarGummi is not enjoined to provide the Parts in accordance with the Contract and to provide adequate assurances of future performance, Volkswagen will immediately suffer irreparable harm. In fact, the loss would be catastrophic.

16. Without continued supply of the Parts, Volkswagen's assembly lines will grind to a halt. Volkswagen's supply chain requires timely delivery of all component parts, otherwise the entire supply chain shuts down, stopping assembly at Volkswagen. Volkswagen requires a timely delivery model, which is standard in the automotive industry and means that it does not have a sufficient inventory of excess parts. The Parts SaarGummi manufactures are unique, component automotive parts that must meet demanding engineering specifications and require extensive certification and validation for production, and SaarGummi is the sole source of supply of these products. Unfortunately, Volkswagen cannot readily obtain replacement parts from another supplier, nor can it manufacture them internally. Each shipment of Parts generally contains just enough parts to support 1.5 days of vehicle production. Consequently, if SaarGummi fails to provide the Parts in accordance with its contractual obligations, the impact on Volkswagen and its ability to manufacturer automobiles is immediate.

17. Such a disruption to Volkswagen's supply chain will, without question, have a dramatic negative financial impact on Volkswagen. SaarGummi is aware Volkswagen has no ready replacement source of supply for these Parts. Additionally, any delay in the delivery of these Parts, delivery of less than the required contract amount or stoppage in delivery of the same can cause an immediate shutdown of Volkswagen's Assembly Plant, which in turn would lead to substantial losses of revenue—likely millions of dollars per day. SaarGummi fundamentally understands the nature of Volkswagen's business and that abruptly stopping deliveries will cause catastrophic harm to Volkswagen. Also, resourcing a new supplier for the Parts would likely

take 9 to 12 months if SaarGummi is allowed to stop shipping the Parts in accordance with its contractual obligations.

18. The gravity of such harm will include, but not be limited to, Volkswagen stopping assembly of vehicles related to the Parts, delaying the launch of Volkswagen's new electric vehicle, the Volkswagen ID.4, and it would be the impetus to having to send up to 3,000 Volkswagen workers home without pay. Volkswagen has also been on a hiring spree to accommodate the labor needs for the production of the Volkswagen ID.4, and if its Assembly Plant is shut down due to SaarGummi's refusal to ship the Parts, that would cause further layoffs and hiring issues. The negative PR of a shut down would also substantially harm Volkswagen's reputation. This would also cause further unavailability of vehicles on the market during a time when vehicle supply is already a critical issue in the United States. Additionally, existing consumers of the Volkswagen Atlas vehicles could also be impacted if those vehicles are in need of repairs involving the Parts SaarGummi supplies.

19. In addition, if SaarGummi is not enjoined to supply the Parts pursuant to its contractual obligations and to provide adequate assurances, Volkswagen's business reputation and goodwill in the automotive industry will be severely damaged, causing it incalculable and irreparable injury.

20. Although SaarGummi has no right to unilaterally demand a price increase under the Contract, Volkswagen has nevertheless bargained in good faith and made several attempts to amicably resolve this dispute. The parties have yet to resolve this matter.

I declare under penalty of perjury under the laws of the United States and the State of Tennessee that the foregoing is true and correct.

Executed on July 27, 2022.

_____
DANIEL SOTO TRESPALACIOS

22043_01/22002/LCT-4882-6455-9402_4